# CASES

# NISI PRIUS.

SITTINGS AFTER NOVEMBER TERM, 1808, AT NEW YORK.

CORAM MR. JUSTICE THOMPSON.

CUNNINGHAM, *survivor of* HALSTED, *against* DUNCAN.

Where the agent, of the survivor of an insolvent firm, being invested with power to collect and pay the debts of such firm, leaves money, then collected, in the hands of a third person, with instructions to pay it to such creditors, an action for money had and received for the use of such survivor will not lie against such third person.

Whether the jury leave their bench or not, the plaintiff, by not answering when called, may preclude them from giving a verdict.

ASSUMPSIT, for money had and received to the use of Cunningham, as survivor of Halsted.

Plea, non-assumpsit.

Cunningham & Halsted had been co-partners in trade. Halsted died in the fall of 1804, during the continuance of

the co-partnership, and one Maver administered on his es-
tate.   Upon the death of Halsted, who was the acting part-
ner in the firm, the affairs of the co-partnership were found
to be considerably deranged.   An advertisement was,
thereupon, inserted in the public papers, signed by Cun-
ningham & Maver, directing the debtors of the partnership
to make payment to Maver, who was verbally empowered
by Cunningham to pay the partnership debts out of the
proceeds.   After payment of part of those debts, 914 dol-
lars were still left in the hands of Maver.   Maver being
under the necessity of leaving the country, placed the same
in the hands of the defendant, in December, 1805, with a
schedule containing the names of the remaining creditors
of Cunningham & Halsted, and written instructions to ap-
propriate that sum to the payment of those creditors.   This
sum, it appeared, was still in the hands of Duncan, the de-
fendant.

In August, 1805, William Cunningham, the father of
the plaintiff, received a general power of attorney, from
his son, to act in the concerns of Cunningham & Halsted,
of which, however, it was doubtful whether notice had
been given to Maver, previous to the payment to Duncan.
This action was brought to recover the sum so deposited
with Duncan by Maver.

THOMPSON, J.   If this action had been brought against
Maver, I think the question would have been very differ-
ent from what it now is.   In this case, however, the money
was received by the defendant, for a special purpose, to be
applied to the payment of certain debts of Cunningham &
Halsted, and, therefore, not received for the use of Cun-
ningham & Halsted, but for the use of third persons, their

Cunningham v. Duncan.

creditors. I am of opinion this action cannot be sustained.(1)

This cause then went to the jury under the charge of the judge. The jury agreed without leaving their bench. The plaintiff, however, when called, did not answer.

*Boyd,* for the defendant suggested that where the jury

(1) So, in the case of *Neilson* v. *Blight,* (1 Johns. Cases, 207,) it was held, by the court, that where a trust is created in any manner, even without the knowledge of the *cestui que trust,* he may affirm it and enforce the trust. The defendant in this case, therefore, was liable as trustee to the creditors, in whose behalf he had received the money, and the trust could not be released without their consent, so as to make the defendant a trustee for the use of the plaintiff.

The point mentioned in the preceding note, which is found in the first edition of this work, has been frequently under consideration, since that time, in various forms, in courts, both of law and equity, and may be considered well settled, both here and in England.

It will suffice to give the remarks of Story, J., in *Halsey* v. *Whitney,* (4 Mas. 214,) on this head, which are fully sustained by the authorities, and very succinctly express the rule: "To the creation of a trust, by deed, in favor of any person, it is not necessary that the *cestui que trust* should either be a party or assent to it. He may, indeed, reject the beneficiary interest, and if he does so, it falls to the ground and becomes, perhaps, a resulting trust for the grantor. But if the trust be for his benefit, the law presumes his assent to it until the contrary is shown; and it is clear that trusts may be lawfully created, when there can be no present assent, for they may be in favor of persons not in existence. It is sufficient, in general, that in such cases there is a competent grantor to convey, and a competent grantee to take the property. As to trusts created for the benefit of creditors, and to which they are not, technically speaking, parties, if *bona fide* made, they are unquestionably valid, by the law of England, and pass a legal estate to the trustee." Vide *Moses* v. *Murgatroyd,* 1 John. Ch. Rep. 119; *Cumberland* v. *Codrington,* 3 John. Ch. Rep. 261; *Shepherd* v. *McEvers,* 4 John. Ch. Rep. 136; *Weston* v. *Barker,* 12 John. 276; *Cunningham* v. *Freeborn,* (in error,) 11 Wend. 241; *Berley* v. *Taylor,* 5 Hill, 577; *Marbury* v. *Brooks,* 7 Wheat. 556; *Brooks* v. *Marbury,* 11 Wheat. 78, &c.; Angel on Assign. 168.

agree without leaving the court, the plaintiff must be considered as present, and the jury cannot be precluded from giving their verdict, as they may where they have retired to deliberate.

THOMPSON, J. I know of no such distinction. Let a non-suit be recorded.(2)

*Woods,* for the plaintiff.

*Bogd,* for the defendant.

(2) The distinction suggested by the counsel in this case, has been frequently asserted in practice; but, upon a diligent examination, I have not been able to find a single case, nor even a *dictum* of any judge or writer, in support of it. The theory of the law on this subject is directly opposed to it. Before the jury deliver their verdict, the plaintiff is bound to appear in court, by himself or by his attorney or counsel, in order to answer the amercement to which, by the old law, he was liable, in case he failed in his suit, as a punishment for his false claim. And if he does not appear, no verdict can be given, but the plaintiff is said to be non-suit, *non sequitur clamorem suum.* 3 Com. 376. Although the amercement is no longer, in fact, exacted, still all the ancient forms attending it are observed, viz: The calling of the plaintiff before the verdict is pronounced, and if pronounced against him, or if he is non-suited, the formal entry of judgment, that he be in *misericordia pro falso clamore.* This then being the true reason for calling the plaintiff, it is immaterial whether the jury have retired or not, the plaintiff must always be called.

The Code of Procedure, and the rules of court carrying the code into effect, supersede the learning (for all practical purposes, at least,) contained in this note. It is now declared, in rule 26, that it shall not be necessary to call the plaintiff when the jury return to the bar to deliver their verdict, and the plaintiff shall have no right to submit to a non-suit after the jury have gone from the bar to consider of their verdict.